UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

INTERNATIONAL UNION, UNITED
AUTOMOBILE AND AEROSPACE
AGRICULTURAL IMPLEMENT
WORKERS OF AMERICA, UAW, *et al.*,

       Plaintiffs,                             Case No. 1:11-cv-463

v.                                                HON. JANET T. NEFF

MAHLE ENGINE COMPONENTS USA,
INC.,

       Defendant.
_____/

## OPINION

This pension dispute was filed by the International Union, United Automobile and Aerospace Agricultural Implement Workers of America, UAW ("the UAW") and twenty of its members who were employed by Defendant Mahle Engine Components USA, Inc. Now pending before the Court are the parties' cross-motions for summary judgment (Dkts 95 & 104). Having conducted a Pre-Motion Conference in this matter and having now fully considered the parties' written briefs, statement of undisputed material facts and accompanying exhibits, the Court finds that the relevant facts and arguments are adequately presented in these materials and that oral argument would not aid the decisional process. *See* W.D. Mich. LCivR 7.2(d). For the reasons that follow, the Court determines that Plaintiffs' motion is properly denied and Defendant's motion is properly granted.

### I. BACKGROUND

Each of the individual Plaintiffs was an hourly employee at a piston ring manufacturing facility that included several buildings located in Muskegon, Michigan ("the Facility") (Dkt 87,

Stipulated Uncontested Facts [SUF] ¶ 1). At all relevant times to this litigation, Plaintiffs were members of the bargaining unit represented by the UAW (*id.* ¶ 2). The Facility was initially owned and operated by Sealed Power Corporation, which became SPX Corporation ("SPX") (*id.* ¶ 3). Each individual Plaintiff worked for SPX at the Facility for over 18 years, until February 7, 1997 (*id.* ¶ 4). SPX and the UAW agreed to a pension plan, entitled Pension Agreement on Amended and Restated Sealed Power Technologies Limited Partnership Pension Plan at Muskegon ("1993 SPX Pension Plan") (*id.* ¶ 5, Stipulated Ex. C). The 1993 SPX Pension Plan provided for supplemental retirement benefits for employees with 30 years of service or 85 points (*id.* ¶ 6).

In 1996, SPX sold the Facility to Dana Corporation ("Dana") (SUF ¶ 7). On February 7, 1997, Dana took control of the Facility and each Plaintiff became an employee of Dana on that date (SUF ¶ 8). When SPX sold the Facility to Dana, none of the individual Plaintiffs were eligible to retire and receive pension benefits based on their work at the Facility (*id.* ¶ 9). During the transition from SPX to Dana, Dana and the UAW executed an Agreement between Dana and the UAW and its Local 637, Muskegon Operations, dated December 19, 1996 ("1996 Dana Assumption Agreement") (*id.* ¶ 10, Stipulated Ex. D). Shortly after taking control of the Facility, Dana established a pension plan, entitled the Dana Corporation–Muskegon Plant Hourly Employees Pension Agreement, effective January 1, 1998 ("1998 Dana Pension Plan") (*id.* ¶ 12, Stipulated Ex. G). Each individual Plaintiff worked for Dana at the Facility from February 7, 1997, until March 8, 2007 (*id.* ¶ 11).

On May 2, 1997, SPX sent an Explanation of Pension Allocation Letter to Plaintiffs explaining the pension allocation ("SPX Letters") (SUF ¶ 13, Stipulated Ex. E). None of the individual Plaintiffs are currently receiving pension benefits from SPX, nor have they received any

pension benefits from SPX since their retirement from Defendant (*id.* ¶ 14). SPX is not a party to this case.

On Saturday, April 10, 2004, the UAW provided to Dana a "60-Day Notice to Employer" ("UAW 60-day Notice") (SUF ¶ 17, Stipulated Ex. I). Dana amended the pension plan and instituted the Dana Corporation–Muskegon Plant Hourly Employees Pension Agreement, effective July 14, 2004 ("2004 Dana Pension Plan") (*id.* ¶ 15, Stipulated Ex. K).

On March 3, 2006, Dana filed for relief under Chapter 11 of the Bankruptcy Code (SUF ¶ 18). When Dana filed for bankruptcy, none of the individual Plaintiffs were eligible to retire and receive pension benefits based on their work at the Facility (*id.* ¶ 19). None of the individual Plaintiffs are currently receiving pension benefits from Dana, nor do they ever expect to receive pension benefits from Dana (*id.* ¶ 16). Dana is also not a party to this case.

Dana sold certain assets under § 363 of the Bankruptcy Code, including its Engine Products Group, to MAHLE gmbH (SUF ¶ 20). Dana and MAHLE gmbH executed a Stock and Asset Purchase Agreement ("SAPA"), dated December 1, 2006 (*id.*, Stipulated Ex. N). Section 10.3 of the SAPA identified the "Assumed Benefit Plans" (*id.* ¶ 21). The plans related to the Facility included:

1. Dana Corporation Muskegon, Michigan Plan Hourly Employees Pension Plan ("2004 Dana Pension Plan");

2. Dana Corporation Muskegon, Michigan Plant Supplemental Unemployment Benefit Plan;

3. Muskegon UAW Supplemental Insurance Agreement; and

4. Perfect Circle—UAW, Muskegon, Michigan Group Health Plan

(*id.*, Stipulated Ex. O). Section 4.17(a) of the SAPA provided that Schedule 4.17(a) was a list of each labor or collective bargaining agreement to which Dana or one of its Subsidiaries was a party (*id.* ¶ 22). Section 4.17(a) listed "Agreement, Dana Corporation Perfect Circle Division Muskegon Operations with UAW Local 637 International Union Dated July 16, 2004" (*id.*, Stipulated Ex. P).

On December 4, 2006, Dana filed a motion to approve the sale of its Engine Products Group to Defendant ("Proposed Sale Order") (SUF ¶ 23, Stipulated Ex. Q). On February 8, 2007, the UAW filed a "Limited Objection" (*id.* ¶ 24, Stipulated Ex. R). On February 23, 2007, the bankruptcy court issued its Order (A) Authorizing the Sale of Assets and Stock Relating to the Debtor's Engine Products Group Free and Clear of All Liens, Claims, Interests and Encumbrances, (B) Authorizing the Assumption and Assignment of Certain Executory Contracts and Leases in Connection Therewith, and (C) Granting Related Relief, approving the sale of Dana's Engine Products Group to Defendant ("Sale Order") (*id.* ¶ 25, Stipulated Ex. S).

When Defendant took over the Facility on March 9, 2007, none of the individual Plaintiffs were eligible to retire and receive pension benefits based on their work at the Facility (SUF ¶ 26). Defendant executed a Second Amendment to the Dana Corporation Muskegon Plant Hourly Employees Pension Agreement, which amended the 2004 Dana Pension Plan to change the name to MAHLE Muskegon Plant Hourly Employees Pension Plan ("Second Amendment to 2004 Dana Pension Plan") (*id.* ¶ 27, Stipulated Ex. L). The amendment was effective March 7, 2007 (*id.*).

On March 9, 2007, Defendant and the UAW executed the Proposal for Assumption of General Agreement between Dana Perfect Circle Muskegon Operations, the UAW and its Local 637, Memorandum of Agreement Engineering Test Line, and Addendum to Memorandum of Agreement ("2007 MAHLE CBA Assumption Agreement") (SUF ¶ 28, Stipulated Ex. U). Also on March 9,

2007, Defendant and Dana executed the Assumed Pension Benefit Plans Assumption Agreement for the Dana Corporation Muskegon, Michigan Plan Hourly Employees Pension Plan ("2007 MAHLE Pension Assumption Agreement") (*id.* ¶ 29, Stipulated Ex. V).

SPX has denied each Plaintiff's request for early retirement pension benefits (SUF ¶ 30). SPX will pay each Plaintiff the deferred vested retirement benefit after he reaches the normal retirement age of 65 (*id.* ¶ 31). In contrast, all of the individual Plaintiffs receive retirement benefits from Defendant (*id.* ¶ 32). For purposes of determining eligibility, Defendant includes each individual Plaintiff's years of service for SPX, Dana and MAHLE (*id.*). For purposes of determining the pension benefit amount, Defendant includes each individual Plaintiff's combined years of service for only Dana and MAHLE (*id.*). Each Plaintiff worked for SPX between 18 and 19 years (*id.* ¶ 33). Each Plaintiff worked for Dana for 10.1 years (*id.*). Plaintiffs worked for Defendant for as little as 3 months or as long as 21 months (*id.*). All of the individual Plaintiffs have timely received from Defendant these pension benefits, as described, since their effective retirement dates (*id.* ¶ 34). Defendant did not enter into any contract with SPX (*id.* ¶ 35).

On May 5, 2011, Plaintiffs initiated this lawsuit, a purported class action, alleging claims under the Labor Management Relations Act (LMRA), 29 U.S.C. § 141 *et seq.* (Count I) and the Employee Retiree Income Security Act (ERISA), 29 U.S.C. § 1001 *et seq.* (Count II). On August 1, 2011, Plaintiffs filed a First Amended Complaint (Dkt 10). This Court conducted a Pre-Motion Conference with counsel in February 2013 and issued a briefing schedule on the parties' proposed dispositive motions (Dkt 66).[1] The parties filed their motion papers in July 2013. Plaintiffs filed

---

[1] Deciding the parties' cross-motions for summary judgment before resolving a class certification motion from Plaintiffs is, in this Court's opinion, in the interest of overall efficiency. *See* FED. R. CIV. P. 23(c)(1) (requiring only that courts decide motions for class certification "at an

their Motion for Summary Judgment (Dkt 95), to which Defendant filed a response (Dkt 105), Plaintiffs filed a reply (Dkt 112), and Defendant filed a sur-reply (Dkt 114). Defendants filed their Motion for Summary Judgment (Dkt 104), to which Plaintiffs filed a response (Dkt 112) and Defendant filed a reply (Dkt 114).

## II. ANALYSIS

### A. Standard of Review

Summary judgment is properly granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). The party moving for summary judgment has the initial burden of showing that no genuine issue of material fact exists. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986); *Street v. J.C. Bradford & Co.,* 886 F.2d 1472, 1479 (6th Cir. 1989). Once the moving party has made such a showing, the burden is on the nonmoving party to demonstrate the existence of an issue to be litigated at trial. *Slusher v. Carson,* 540 F.3d 449, 453 (6th Cir. 2008). The court must view the evidence and draw all reasonable inferences in favor of the nonmoving party. *Id.* The central issue is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986).

### B. Discussion

This case turns on the fact that Defendant entered into a "free and clear" sale, i.e., a sale "free and clear of any interest in such property of an entity other than the estate." 11 U.S.C. § 363(f). The

---

early practicable time"); 7AA CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE & PROCEDURE § 1785.3 (3d ed. 2013) ("The time at which the court finds it appropriate to make its class-action determination may vary with the circumstances of the particular case.").

Sixth Circuit Court of Appeals has held that the effect of a bankruptcy court's order approving the sale of a debtor's assets free and clear of any interest or claims that could be brought against the bankrupt estate is "to extinguish [the claimant's] claim unless it was expressly assumed by [the purchaser] as part of the purchase agreement." *Al Perry Enters., Inc. v. Appalachian Fuels, LLC*, 503 F.3d 538, 541 (6th Cir. 2007).

Similarly, ERISA includes a writing requirement, 29 U.S.C. § 1022(a), to ensure that "every employee may, on examining the plan documents, determine exactly what his rights and obligations are under the plan," *Sprague v. Gen. Motors Corp.*, 133 F.3d 388, 402 (6th Cir. 1998) (quoting *Curtiss-Wright Corp. v. Schoonejongen*, 514 U.S. 73, 83 (1995)), and to lend predictability and certainty to employee benefit plans, *id.* (citing *Gable v. Sweetheart Cup Co., Inc.*, 35 F.3d 851, 857 (4th Cir. 1994)). While there is no requirement in ERISA regulations that the terms of an ERISA plan be contained in a single document, "[f]or the terms of another document to be incorporated by reference into the document executed by the parties, the reference must be clear and unequivocal, and must be called to the attention of the other party, he must consent thereto, and the terms of the incorporated document must be known or easily available to the contracting parties." *Rinard v. Eastern Co.*, 978 F.2d 265, 269 n.3 (6th Cir. 1992) (quoting 17A C.J.S. *Contracts* § 299).

Here, despite the labyrinth of agreements necessarily identified to state the facts in this case, the Stock and Asset Purchase Agreement identifies only four plans related to the Facility that Defendant assumed, to wit: (1) the 2004 Dana Pension Plan, (2) the Dana CBA, (3) the Muskegon UAW Supplemental Insurance Agreement, and (4) the Perfect Circle—UAW, Muskegon, Michigan Group Health Plan (Dkt 87 at ¶ 21, Stipulated Ex. O). Plaintiffs argue that Defendant assumed a "general body of pension obligations" (Dkt 96 at 24), but there is no generality or ambiguity about

which pension and collective bargaining agreements that Defendant assumed when it purchased the Facility.

Plaintiffs also argue that the 2004 CBA does not "preclude[] an examination of the extrinsic evidence to determine the intent of the parties" (Dkt 112 at 16). According to Plaintiffs, the language of the 2004 CBA can "plausibly" be read to include "either the 1996 Dana Assumption Agreement (or some of its terms) or an agreement to continue some of the terms" (Dkt 112 at 11-12). Specifically, Plaintiffs seek to have Defendant bear the obligation arising from a sentence within the 1996 Dana Assumption Agreement that Plaintiffs isolate and characterize as a "pension protection promise" (Dkt 96 at 4 n.1, 20), which provides that "in no event will such allocation of liability result in the curtailment or reduction of benefits as proscribed in the Collective Bargaining Agreements" (Stipulated Ex. D at 2).[2] Plaintiffs argue that certain "extrinsic evidence shows that the pension protection promise contained in the 1996 Dana Assumption Agreement "became a part of the 1993-98 contract; was carried forward when Dana and the UAW negotiated agreements in 1998, 2001 and 2004; and was never removed from the collectively bargained agreements assumed by MAHLE both as part of the SAPA and the 2007 MAHLE Assumption Agreement with the UAW" (Dkt 96 at 22). However, as Defendant ably demonstrates in its cross-motion papers, it did not assume the 1996 Dana Assumption Agreement, and Plaintiffs' arguments for its inclusion lack merit.

---

[2]Plaintiffs do not assert in this case that Defendant has failed to comply with the obligations set forth in the 2004 CBA, which provides that "Employee's Past Service shall not be taken into account in determining the amount of the employee's pension benefits" (Dkt 90-1 at Page ID#1213, Stipulated Ex. K at § 3.1(b)).

According to Plaintiffs, "when [Defendant] bought this ongoing operation it simply stepped into the shoes of Dana and now must be responsible for the pension protection promise contained in the 1996 Dana Assumption Agreement" (Dkt 96 at 30). However, as Defendant points out, successor liability was expressly excluded in this bankruptcy sale (Dkt 105 at 41, n.19). The Sale Order provides that "except as otherwise specifically provided herein or in the Agreement, MAHLE shall not be liable for any Claims against the Debtors or any of their predecessors or affiliates, and MAHLE shall have no successor or vicarious liabilities of any kind or character" (Dkt 92-2 at Page ID#1761, Stipulated Ex. S at ¶ 23).

Moreover, the 1996 Dana Assumption Agreement was not incorporated by reference in the 2004 Dana CBA that Defendant assumed. "Terms are incorporated by reference into a CBA 'where the underlying contract makes clear reference to a separate document, the identity of the separate document may be ascertained, and incorporation of the document will not result in surprise or hardship.'" *Teamsters Local Union No. 783 v. Anheuser-Busch, Inc.*, 626 F.3d 256, 262 (6th Cir. 2010) (quoting *Int'l Ass'n of Machinists & Aerospace Workers v. ISP Chems., Inc.*, 261 F. App'x 841, 848 (6th Cir. 2008)). The 1996 Dana Assumption Agreement is not even mentioned in the 126-page 2004 Dana CBA, which, conversely, indicates that "[a]ny former Agreements between the parties which conflict with or are inconsistent with this Agreement are nullified by this Agreement" (Dkt 89-5 at Page ID#1165, Stipulated Ex. J at ¶ 43). Indeed, Defendant asserts that it first obtained a copy of the 1996 Dana Assumption Agreement when it was served as an exhibit with the Complaint in this action (Dkt 105 at 8).

Plaintiffs attempt to frame the question at bar as whether Defendant can establish that the parties intended to "strip away" the 1996 pension protection promise from the agreements that

Defendant assumed (Dkt 96 at 20). However, Defendant is not required to demonstrate what, if anything, was "stripped away" over the years by pre-sale conduct, nor do these facts permit this Court to consider extrinsic evidence of negotiations and intentions. The pivotal question is what did Defendant *assume* in the free-and-clear sale, and the undisputed facts demonstrate that Defendant did not assume the 1996 Dana Assumption Agreement and concomitantly did not assume the "pension protection promise" contained therein.

Even assuming arguendo that Plaintiffs could establish that Defendant assumed the 1996 Dana Assumption Agreement when it purchased certain stock and assets of Dana, Defendant also properly argues that Plaintiffs' reliance on the 1996 Dana Assumption Agreement document is misplaced, for several reasons that independently preclude relief for Plaintiffs from this Defendant. First, Defendant is not a party to the 1996 document. Only Dana and the UAW and its Local 637 entered into this document (Dkt 88-4 at Page ID#872). Second, for the reasons this Court previously expressed, Defendant did not assume the 1996 document when it purchased the Facility in 2006. Third, the document, on its own terms, expired July 24, 1998 (Dkt 88-4 at Page ID#874). Fourth, as previously noted, the 2004 Dana CBA expressly nullified "[a]ny former Agreements between the parties which conflict with or are inconsistent with this Agreement" (Dkt 89-5 at Page ID#1165, Stipulated Ex. J at ¶ 43).

Last, and most critical, the 1996 document does not support finding a breach by this Defendant. Section III of the 1996 document, which is the section containing the sentence Plaintiffs characterize as the "pension protection promise," provides the following:

> III. Group Insurance, SUB, and the Pension Plan will continue with the current eligibility requirements and benefit levels. Additionally, all scheduled benefit level changes, if any, will be effective as proscribed by the above-referenced plans. The liability for such benefits or portions thereof will be the responsibility of the

> Predecessor and/or Dana Corporation as determined by the provisions of the Sales Agreement by and between Dana Corporation and Sealed Power Technologies, L.P., which includes the Muskegon Operations. However, in no event will such allocation of liability result in a curtailment or reduction of benefits as proscribed by the Collective Bargaining Agreement and its Supplements.

(Dkt 88-4 at Page ID#873, Stipulated Ex. D at 3). As Defendant points out, the language neither contemplates nor addresses the obligations of a third-party purchaser, which are the circumstances at bar (Dkt 105 at 9, 12).

In sum, Defendant did not assume the 1996 Dana Assumption Agreement, and even if it did, the agreement would not support a claim that Defendant has breached any obligation to Plaintiffs. Defendant's liability to Plaintiffs, if any, is limited to those obligations arising under the 2004 Dana Pension Plan and the 2004 Dana CBA. Defendant is therefore entitled to judgment as a matter of law on Plaintiffs' claims in this case.

### III. CONCLUSION

For the foregoing reasons, Plaintiffs' Motion for Summary Judgment (Dkt 95) is DENIED and Defendant's Motion for Summary Judgment (Dkt 104) is GRANTED. An Order will be entered consistent with this Opinion. Further, as the Order resolves all pending claims in this case, a Judgment will also be entered.

DATED: October 22, 2013         /s/ Janet T. Neff
                                JANET T. NEFF
                                United States District Judge